**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAWNA L. WEEKLEY, | ) | CASE NO. 5:26-CV-00055-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**I. Introduction**

Shawna L. Weekley ("Weekley" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 5). For the reasons set forth below, the Court AFFIRMS the Commissioner's final decision denying Weekley SSI.

**II. Procedural History**

On December 8, 2022, Weekley filed an SSI application, alleging a disability onset date of April 1, 2020, and claiming she was disabled due to major depressive disorder, degenerative disc disease with bulging lumbar discs and history of a motor vehicle accident, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. (ECF No. 11, PageID #: 1111). The applications were denied initially and upon reconsideration, and Weekley requested a hearing

before an administrative law judge ("ALJ"). (*Id.*). On June 25, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). During the hearing, Claimant amended the alleged onset date to July 13, 2022. (ECF No. 9, PageID #: 106). On September 5, 2024, the ALJ issued a written decision finding Weekley was not disabled. (ECF No. 11, PageID #: 1111). The ALJ's decision became final on November 12, 2025, when the Appeals Council declined further review. (*Id.*).

On January 8, 2026, Weekley filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 14, 16). Weekley asserts the following assignments of error:

> (1) The ALJ erred at step three in concluding that Claimant's impairments did not meet or equal Listing 1.15.
>
> (2) The ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") and Claimant's limitations and Level 3 reasoning required for to identified occupations, and that the ALJ relied on unsupported testimony and outdated job descriptions that do not accurately reflect work in today's economy.
>
> (3) The ALJ erred in her determination that the number of identified jobs constitute a significant number in the economy.

(ECF No. 11 at 1).

## III. Background

### A. Plaintiff's Hearing Testimony

The ALJ summarized the relevant portions of Weekley's testimony from the hearing:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. While the claimant maintained she has difficulty with

concentration and completing tasks, her ability to complete activities of daily living and respond appropriately to questions indicates that any difficulties in this area do not rise to the level of marked or extreme (Hearing testimony; Exhibits 3E/2; 4E/6; 5E/4; 10F/23; 14F/24). She has also described activities that typically require at least some level of concentration, persistence, or pace such as caring for her personal needs, shopping, using a computer, reading, texting, and driving a car (Exhibits 4E/2-5; 5E/2-3; 13F/7).

As for adapting or managing oneself, the claimant has experienced no limitation. She can perform household chores, self-care, and personal responsibilities without significant modifications or adjustment necessitated by psychologically based symptoms or impairments (Hearing testimony; Exhibits 4E/2-5; 5E/2-3; 13F/7).

. . .

The claimant suggested she has problems with handling stress and changes in routine, social interaction, memory, comprehension, following instructions, concentration, and completing tasks, but she has not required any inpatient psychiatric hospitalizations and has reported she can shop in stores and drive with minimal trouble or assistance (Hearing testimony; Exhibits 4E; 5E).

. . .

The claimant alleged she is unable to work because of ankle pain, anxiety disorder, depression, PTSD, fibromyalgia, chronic pain, nerve damage, sciatica, trigeminal neuralgia, and degenerative disc disease (Hearing testimony; Exhibits 2E/2; 7E/2; 13E/1-2). According to the claimant's hearing testimony, she experiences constant back pain, crying spells, panic attacks, and excessive thoughts and worries. She also asserted her pain causes her to lose her breath and have tremors (Exhibit 4E/1). She testified she fell a few days before the hearing. She also testified she has panic attacks most days of the week and has days she does not want to get out of bed or do anything all day.

She contended she has required medical treatment and medications such as ibuprofen, lidocaine patches, Lyrica, Lexapro, and Risperidone (Hearing testimony; Exhibits 2E/4-8; 4E/8; 7E/3-4; 9E/3). She claimed some of her medications cause medication side effects such as drowsiness, dizziness, and blurred vision (Hearing testimony; Exhibits 4E/7-8; 5E/5).

Despite reporting a history of relatively conservative treatment, the claimant maintained she has difficulty with sitting, standing, walking, lifting, squatting, bending, kneeling, climbing stairs, reaching, using her hands, speaking, hearing, seeing, memory, completing tasks, concentration, comprehension, following instructions, social interaction, and handling stress and changes in routine (Exhibits 4E/1, 6-7; 5E/1, 4). During the hearing, she testified she can only stand for a couple of minutes before she must sit down. She insisted she requires the use of a cane,

> walker, wheelchair, or a rollator (Hearing testimony; Exhibit 4E/1, 7).
>
> However, while she testified that she needs help to do chores and that it takes her a long time to clean, she has described a wide range of demanding activities of daily living that indicate her impairments are not as limiting as alleged. In particular, she explained she can care for her personal needs, shop in stores, operate a computer, text, and drive (Hearing testimony; Exhibits 4E; 5E).

(ECF No. 11, PageID #: 112–15).

**B. Relevant Medical Evidence**

The ALJ summarized her findings related to Weekley's impairments and combination of impairments as they relate to Listing 1.15):

> Although the claimant's representative argued during the hearing that the claimant's impairments meet listing 1.15 for disorders of the skeletal spine resulting in compromise of a nerve root, none of the claimant's impairments, either singly or in combination, meets or medically equals any of the Listed Impairments contained in 20 CFR Part 404, Subpart P, Appendix 1. The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment (e.g., Exhibits 1A; 3A). Specifically, the undersigned finds the claimant's impairments do not meet or medically equal listings 1.15 for disorders of the skeletal spine resulting in compromise of a nerve root, 1.16 for lumbar spinal stenosis resulting in compromise of the cauda equina, 12.04 for depressive, bipolar, and related disorders, 12.06 for anxiety and obsessive-compulsive disorders, and 12.15 for trauma- and stressor-related disorders.
>
> The claimant's representative contended that her impairments meet listing 1.15 for disorders of the skeletal spine resulting in compromise of a nerve root, but the undersigned finds that criteria of this listing have not been satisfied. While she has endorsed symptoms consistent with compromise of the affected nerve roots such as pain, paresthesia, or muscle fatigue and a July 2022 magnetic resonance image (MRI) showed stenosis associated with exiting nerve root impingement at L4-L5 and L5-S1, a September 2022 electromyography (EMG) was negative for lumbar radiculopathy (Exhibits 1F/32-33; 2F/1; 4F/7). There is also no medical documentation of the need for an assistive device or an inability to use one or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements that has lasted or is expected to last twelve consecutive months. She was noted to have DIP joint abnormalities in early 2022, but no acceptable medical source indicated she had any problems using her

> upper extremities (Exhibit 11F/29, 134). Similarly, she was occasionally observed to walk with an antalgic gait, but medical professionals generally determined the claimant was able to walk with a normal gait without the use of an assistive device during most of the period at issue (Exhibits 1F/24; 2F/6; 3F/5, 16; 4F/17, 41; 12F/14; 14F/19, 26). Although her doctor prescribed a cane in October 2023, there is no evidence an acceptable medical source determined an assistive device was necessary beforehand or that the cane would be necessary for twelve consecutive months or more (Exhibit 15F/2). Nonetheless, the undersigned has considered the claimant's use of a cane in the residual functional capacity outlined below.

(ECF No. 11, PageID #: 110–11).

**C. Vocational Expert Testimony**

The ALJ also summarized the vocational expert's testimony and her findings related to Weekley's ability to perform other work in the national economy:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
> 1. <u>Telephone quotation clerk</u> (DOT Code 237.367-046), which is generally performed at the sedentary exertional level with an SVP of 2 (unskilled). The vocational expert indicated there are approximately 6,000 such jobs existing in the national economy.
> 2. <u>Document preparer</u> (DOT Code 249.587-018), which is generally performed at the sedentary exertional level with an SVP of 2 (unskilled). The vocational expert indicated there are approximately 14,000 such jobs existing in the national economy.
> 3. <u>Charge account clerk</u> (DOT Code 205.367-014), which is generally performed at the sedentary exertional level with an SVP of 2 (unskilled). The vocational expert indicated there are approximately 2,500 such jobs existing in the national economy.
>
> The undersigned acknowledges that the Dictionary of Occupational Titles (DOT) and its companion publication, Selected Characteristics of Occupations (SCO), do not explicitly address some of the restrictions contained in the claimant's residual functional capacity such as different types of climbing, the use of an assistive

device, self-paced work, and production quotas. According to the vocational expert, his testimony pertaining to these matters was based on his knowledge, education, training, and experience in the vocational science field so that it is not inconsistent with these publications (Exhibit 11E). In light of this explanation, the undersigned finds the vocational expert's testimony to be persuasive and well supported, and in compliance with the requirements of SSR 00-4p and accepts this testimony. The undersigned also notes that the claimant's representative stipulated to the vocational expert's qualifications and had the opportunity to question the vocational expert during the hearing.

(ECF No. 11, PageID #: 119).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since December 8, 2022, the application date (20 CFR 416.971 *et seq*.).

. . .

2. The claimant has the following severe impairments: degenerative disc disease with bulging lumbar discs and history of motor vehicle accident; major depressive disorder (MDD)/generalized anxiety disorder (GAD)/post-traumatic stress disorder (PTSD); and obesity (20 CFR 416.920(c)).

. . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

. . .

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she has additional limitations. The claimant can only occasionally climb stairs, crouch, crawl, kneel, and stoop/bend. She can occasionally balance as defined in the *Selected Characteristics of Occupations* (SCO). She is unable to work around workplace hazards such as dangerous, moving machinery and unprotected heights so the claimant is not able to climb ladders/ropes/scaffolding. The claimant can use the bilateral lower extremities to operate foot controls frequently. She can use the bilateral upper extremities for reaching, handling, and grasping frequently. The claimant requires an assistive device to ambulate. She is limited to work that is self-paced as opposed to working in a production-rate environment or in a job with an hourly quota. She is limited to

> simple work, which is work that requires only simple decisions and no complex decisions.
>
> . . .
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
> Past relevant work generally refers to employment activity that was performed within the relevant period, was not started and stopped in fewer than thirty calendar days, lasted long enough for the claimant to learn to do it, and was substantial gainful activity (SSRs 24-1p; 24-2p). In this case, however, even though the claimant reported she has worked as cook, bartender, and office manager, and mentor in the past, the undersigned finds she has no past relevant work because she has not worked at substantial gainful activity levels in the past five years (Hearing testimony; Exhibits 3D-10D; 1E; 2E/3; 13E/1-2).
>
> 6. The claimant was born on February 6, 1978 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> . . .
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since December 8, 2022, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 9, PageID #: 109–10, 113–14, 118, 121).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Weekley raises three issues on appeal, arguing (1) the ALJ erred at step three in concluding that Claimant's impairments did not meet or equal Listing 1.15, (2) the ALJ erred by relying on obsolete occupations and failed to resolve conflicts between the vocational expert's testimony and the DOT, and (3) the ALJ erred at step five when she found that significant numbers of jobs exist in the national economy which Claimant can perform with her RFC. (ECF No. 11 at 14, 16, 22).

**1. Evaluation of Claimant's Impairments According to Listing 1.15**

Claimant first challenges the ALJ's conclusion that her impairments did not meet or medically equal Listing 1.15. (ECF No. 11 at 14).

At step three, a claimant will be found disabled if her impairment meets or equals a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). Appendix 1 to Subpart P of the regulations, the Listing of Impairments, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements of a listed impairment and the durational requirement is deemed disabled and entitled to benefits. *Id.* SSR 17-2p provides guidance for the ALJ to determine whether a claimant medically equals a listed impairment where the individual's symptoms may not specifically meet, but are analogous to, a listed impairment. 82 Fed. Reg. 57, 15263.

Each listing specifies "the objective medical [evidence] and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). The claimant has the burden of establishing that their impairments meet or are medically equivalent to a listed impairment. *See, e.g., Lett v. Colvin*, No. 1:13 CV 2517, 2015 WL 853425, at *15 (N.D. Ohio Feb. 26, 2015). To "meet" the listing, a claimant must satisfy all applicable criteria. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). An impairment that does not manifest each of the required criteria under a listing shall not qualify, regardless of the severity of the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 1.15 includes disorders of the skeletal spine resulting in compromise of a nerve root(s). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15. For a claimant to prove that her impairments meet or medically equal Listing 1.15, a claimant must meet the criteria under A, B, C, and D:

> A. Neuro-anatomic (radicular) distribution of one or more of the following *symptoms* consistent with compromise of the affected nerve root(s):
> 1. Pain; or
> 2. Paresthesia; or
> 3. Muscle fatigue.
>
> AND
>
> B. Radicular distribution of neurological *signs* present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:
> 1. Muscle weakness; and
> 2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
> 3. Sensory changes evidenced by:
> a. Decreased sensation; or
> b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; *or*
> 4. Decreased deep tendon reflexes.
>
> AND

> C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.
>
> AND
>
> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following:
>
> > 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
> > 2. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), *and* a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
> > 3. An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

*Id.*

The ALJ must make sufficiently clear the reasons for their decision of whether a claimant meets or medically equals a listing so a court may conduct meaningful review. *Cotter v. Comm'r of Soc. Sec.*, No. 1:23-CV-00028-BYP, 2024 WL 1556356, *7 (N.D. Ohio Jan. 11, 2024), *report and recommendation adopted sub nom. Cotter v. O'Malley*, No. 1:23-CV-0028, 2024 WL 1250005 (N.D. Ohio Mar. 25, 2024) (citing *Reynolds v. Comm's of Soc. Sec.*, 424 F. App'x 411, 416–17 (6th Cir. 2011)). The ALJ must evaluate the evidence, compare it to the requirements of the relevant Listing, and explain the reasons for their conclusion. *Id.* (citing *Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *5 (6th Cir. March 6, 2017). "Although it is the claimant's burden of proof at Step 3, the ALJ must provide articulation of his Step 3 findings that will permit meaningful review." *Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014).

Here, the ALJ concluded that "none of the claimant's impairments, either singly or in combination, meets or medically equals any of the Listed Impairments contained in 20 CFR Part 404, Subpart P, Appendix 1." (ECF No. 9, PageID #: 110). Claimant argues that the ALJ's determination is not supported by substantial evidence because the ALJ "improperly discounted MRI evidence showing nerve root compromise and relied on isolated normal findings while ignoring consistent evidence of worsening gait problems and Plaintiff's need for an ambulatory device." (ECF No. 11, PageID #: 1133). Claimant opines the following:

> Listing 1.15 requires (1) objective evidence of a disorder of the skeletal spine resulting in compromise of a nerve root, established by imaging or other acceptable diagnostic testing, and (2) resulting functional limitation for a continuous 12-month period, demonstrated by either (a) the documented need for a hand-held assistive device that limits independent standing or walking, or (b) inability to use an upper extremity for work-related fine and gross motor functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.15 (SSA Listing 1.15 – Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root(s)).

(ECF No. 11, PageID #: 1123).

The Commissioner responds that Plaintiff did not meet her burden of showing that her impairments meet the A, B, C, and D criteria for Listing 1.15. (ECF No. 14, PageID #: 1145–47). The Commissioner contends that even if Claimant provided evidence that she met the requirements under A, B, and C, there is no evidence in the record that proves the Claimant "had a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device during the relevant period," an inability to use one upper extremity to independently complete work-related activities and a need for a one-handed assistive device for that upper extremity, or that Claimant had an inability to use both upper extremities. (*Id.* at PageID #: 1148–49).

The Court agrees with the Commissioner. The regulations require that Claimant meet all criteria of Listing 1.15 and Claimant does not argue that she has produced sufficient evidence

proving that criteria A, B, C, and D were met. Instead, Claimant argues that "the record as a whole demonstrates progressive and persistent functional limitation in ambulation." (ECF No. 11, PageID #: 1124). While Claimant argues that the ALJ relied on "intermittent normal gait observations, and the absence of earlier assistive device prescription," that is not what the ALJ did in this case. The ALJ discussed several specific pieces of evidence when coming to this decision. First, the ALJ discussed evidence that supports Claimant meeting criteria A and B, such as the claimant had "symptoms consistent with compromise of the affected nerve roots such as pain, paresthesia, or muscle fatigue and a July 2022 magnetic resonance image (MRI) showed stenosis associated with exiting nerve root impingement at L4-L5 and L5-S1." (ECF No. 9, PageID #: 111). The ALJ then compares this evidence with other evidence in the record, including a September 2022 EMG that was negative for lumbar radiculopathy, and that, by citing to Exhibits 1F, 2F, 3F, 4F, 12F, and 14F, the ALJ found that "medical professionals generally determined the claimant was able to walk with a normal gait without the use of an assistive device during most of the period at issue." (*Id.*). Additionally, the ALJ noted that a doctor prescribed Claimant a cane in October 2023, but found that "there is no evidence an acceptable medical source determined an assistive device was necessary beforehand or that the cane would be necessary for twelve consecutive months or more." (*Id.*).

Based on the ALJ's discussion of the competing medical evidence in the record, the ALJ properly analyzed Claimant's impairment under Listing 1.15. The ALJ did not merely discount evidence favorable to claimant, but instead considered that evidence alongside evidence that did not support a finding that Claimant's impairment met the listing. Importantly, the ALJ did not conclude that Claimant failed to satisfy each of the four criteria of Listing 1.15; rather, that Claimant did not prove she met criteria D. The ALJ discussed the medical evidence and concluded

that there is "no medical documentation of the need for an assistive device or an inability to use one or both upper extremities . . . that has lasted or is expected to last twelve consecutive months." (*Id.*). Claimant's argument that her impairments led to her ultimately needing assistive devices, specifically being prescribed a cane in October 2023 and a Handicap Placard, is insufficient to prove Listing 1.15 D criteria because the evidence does not show that Claimant had to use such devices for at least twelve consecutive months. (*Id.*); (ECF No. 11, PageID #: 1124). While the ALJ did note that she considered "the claimant's use of a cane in the residual functional capacity," this does not negate the ALJ's conclusion that this evidence does not sufficiently prove the criteria needed in Listing 1.15. Further, Claimant's briefings do not indicate any other medical evidence that proves the continuous use of an assistive device or an inability to use one or both upper extremities. Therefore, because Claimant has not demonstrated that the requirements of criteria D were satisfied, she has not established that all four criteria necessary to meet Listing 1.15 were present.

Accordingly, the ALJ did not err in her determination that Claimant impairments do not meet the requirements of Listing 1.15.

**2. Reliance on the Vocational Expert's Testimony Concerning the Identified Occupations**

Claimant next challenges the ALJ's reliance on the vocational expert's testimony and alleges that conflicts regarding the identified occupations were not properly addressed by the ALJ. (ECF No. 11 at 16).

At step five, the Commissioner has the burden of proof to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the

impairments *already proven*, whether there are jobs in the economy which a claimant can perform." *Id*. (emphasis added). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Hum. Servs*., 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question . . . if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted); *see also O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316 (6th Cir. 2020).

Sixth Circuit case law makes clear that ALJs may rely on the DOT to establish that work that a claimant can perform exists in significant numbers the national economy. *O'Neal*, 799 F. App'x at 317; *see also Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). An ALJ may properly rely on vocational expert testimony that is consistent with the DOT so long as "the ALJ either ensure[s] that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict." *Id.* ALJs have "an affirmative duty" to ask vocational experts whether their evidence conflicts with information in the DOT. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605–06 (6th Cir. 2009). However, there is no requirement for the ALJ to recite the precise language from SSR 00-4p in order to determine whether there are any inconsistencies. *Id.* (concluding that "there is no material difference between asking if there are any 'discrepancies' and asking whether there are any 'conflicts.'").

When a DOT occupation appears to be obsolete, more recent occupational information may need to be considered in determining whether the vocational expert's testimony remains reliable. *Cunningham v. Astrue*, 360 F. App'x 606, 615–16 (6th Cir. 2010). However, the DOT itself is not

obsolete and an ALJ is still entitled to rely on a vocational expert's testimony. *O'Neal*, 799 F. App'x at 317. The Social Security administration recognizes that a DOT job description may contain "job materials or processes that have been replaced by more modern materials or processes." *See Soc. Sec. Admin. Emergency Message 24027: Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process*, https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last accessed October 2, 2026) (hereinafter "EM-24027"). In those instances, the vocational expert should identify the differences and explain how the occupation is currently performed. SSA, Vocational Expert Handbook 37 (June 2024), https://www.ssa.gov/appeals/public_experts/Vocational_Experts_%28VE%29_Handbook-508.pdf (last visited Oct. 2, 2026). The regulations continue to list the DOT as a reliable source, but O*NET has not been included as a reliable source in the regulations. *O'Neal* 799 F. App'x at 317.

Claimant's counsel may cross-examine a vocational expert concerning alleged conflicts in a vocational expert's testimony. *Beinlinch v.Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. 2009). Courts will consider whether the claimant had an opportunity to challenge vocational expert's testimony and identify conflicts with the DOT through cross-examination but did not do so. *See O'Neal*, 799 F. App'x at 317–18 (discussing how the claimant's failure to use his opportunity to cross-examine the vocational expert concerning whether the identified occupations were obsolete helped support the ALJ's finding that the vocational expert's testimony constitutes substantial evidence that the claimant was "able to perform work that existed in significant numbers in the national economy."). Ultimately, the ALJ is not obligated to investigate the

accuracy of the vocational expert's testimony outside of what is required in SSR 00-4p. *Lindsley*, 560 F.3d at 606–07.

Here, Plaintiff challenged the vocational expert's testimony after the hearing through filing a post-hearing brief. (ECF No. 9, PageID #: 120). The ALJ addressed Claimant's post-hearing objections to both the occupations identified by the vocational expert and the corresponding number of jobs available in the national economy as follows:

> In a post-hearing brief, the claimant's representative argued that the occupations of document preparer and telephone quotation clerk do not exist in the manner in which the vocational expert testified based on information contained in O*Net and the Vocational Expert Handbook (Exhibit 14E/1-2). The undersigned recognizes that some courts have questioned whether certain occupations– particularly the document preparer job– continue to be performed in the manner they are described in the DOT. An Administrative Law Judge may not rely on any of the DOT occupations specifically listed in EM-24027 to support a "not disabled" determination or decision that uses the Medical-Vocational Guidelines as a framework for decision-making without additional evidence from a vocational expert or vocational specialist about how the occupation is currently performed. However, the impartial vocational expert explained that while the tools used to perform the document preparer job have changed but the essential tasks have remained similar, as he testified that instead of using microfiche, document preparers use scanners to prepare documents. He also testified that while the job of the telephone quotation clerk has changed, as they no longer provide stock information, the duties of the job remain the same as they provide price quotes.
>
> Although this argument was considered, the undersigned accepts the vocational expert testimony and overrules these objections. While the description of the document preparer position now includes use of a scanner, the job of document preparer still would be classified as SVP 2 because the machine only would be used for very simple tasks like scanning. As for the telephone quotation clerk job, the duties of this job remain the same as they provide price quotes. While the claimant's representative argued that the jobs of document preparer and telephone quotation clerk have an SVP level that exceeds unskilled work per O*NET and the Vocational Expert Handbook, which do not correspond to its unskilled SVP classification in the DOT (Exhibit 14E/1-2). The vocational expert identified other work that exists in the national economy while appropriately considering the claimant's residual functional capacity, age, education, and work experience. The vocational expert cited representative occupations that the claimant could perform given these factors, and his testimony regarding the skill level of these occupations is consistent with the DOT. The Regulations provide that the undersigned take administrative notice of "reliable job information" available from various publications, including

> the DOT (20 CFR 416.966(d); *see also* SSR 00-4p). In contrast, the Regulations do not direct an adjudicator to take notice of O*NET, the Vocational Expert Handbook, and the other sources cited by the claimant's representative. The undersigned also accepts the vocational expert testimony regarding the estimated number of jobs available for these occupations, as his testimony was based on his experience and research (20 CFR 416.966; SSR 00-4p).
>
> It is further noted, however, that even if document preparer and telephone quotation clerk were removed from consideration, the number of other jobs cited by the vocational expert would still exceed the well-established threshold of what constitutes a significant number of jobs.
>
> Furthermore, the claimant's representative contended that the occupations and jobs enumerated by the vocational expert fail to constitute significant numbers (Exhibit 13E/2, 4-5). He also attached another ALJ's opinion that determined 30,000 combined jobs nationally did not constate significant numbers (Exhibit 13E/4-5). However, the Regulations only contrast work in the national economy to "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region" (20 CFR 416.966). The undersigned notes that the number of jobs cited by the impartial vocational expert is an *estimate* based on reliable information from various sources, some of which the undersigned takes administrative notice (20 CFR 416.966(d)). These sources include the DOT and census reports, not another ALJ's decision (20 CFR 416.966(d)). An exact number of jobs need not be provided to constitute significant numbers; rather, the burden at step 5 of the sequential evaluation is to show that a significant number of jobs exist within the confines of the hypothetical. As the other ALJ noted in her decision, *Hall v. Bowen,* 837 F.2d 272, 275 (6th Circuit. 1988), held that there is no "special number" that constitutes a significant number of jobs and that the "decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation" (Exhibit 14E/5). Furthermore, the vocational expert relied on his knowledge of the field of vocational rehabilitation to arrive at these numbers and his estimates were based in part upon the publications of which the Agency takes administrative notice. The impartial vocational expert is a qualified expert for purposes of the testimony at the hearing and is qualified to provide an estimate of jobs. Therefore, the undersigned accepts the testimony of the impartial vocational expert and finds that a sufficient number of jobs exist in the above-cited positions. The undersigned notes that even if the numbers provided by the impartial vocational expert were over inclusive, far fewer numbers of available jobs would suffice. The vocational expert's testimony did not identify an isolated job that exists only in very limited numbers in relatively few locations (20 CFR 416.966; SSR 00-4p).

(ECF No. 9, PageID #: 120–21).

Regarding the selected occupations and the descriptions provided by the vocational expert, the Claimant first argues that the ALJ "failed to resolve an obvious conflict between the [vocational expert's] testimony and the DOT." (ECF No. 11, PageID #: 1125). Claimant argues that there were obvious conflicts in the vocational expert's testimony regarding the Document Preparer and Telephone Quotation Clerk occupations. (*Id.* at PageID #: 1126). Claimant alleges that the "requirements and skills clearly extend beyond the basic tasks described in the DOT's outdated description of Document Preparer and Telephone Quotation Clerk, which have not been updated since 1986 and 1977 respectively." (*Id.*). Claimant states that the ALJ simply adopted the vocational expert's testimony without addressing the conflicts that became apparent during cross examination and in the post-hearing brief, relying on *Ensley v. Commissioner of Social Security* to support her arguments. (*Id.*). Claimant makes a second argument that Document Preparer and Telephone Quotation Clerk occupations are obsolete because the "DOT descriptions have not been updated since at least 1986 and reflects work processes, such as microfiche preparation or providing stock quotations that no longer exist in the modern economy." (*Id.* at PageID #: 1129).

The Commissioner responds that the ALJ properly relied on the DOT, the vocational expert's testimony, and specifically inquired about the differences in how these two occupations are performed in modern time in order to ultimately determine that there are jobs at significant numbers in the national economy that Claimant can perform. (ECF No. 14, PageID #: 1151–55). The Commissioner argues that Claimant states that there are apparent conflicts with the Document Preparer and Telephone Quotation Clerk occupations and that they are obsolete without providing any direct or contradicting evidence to the vocational expert's testimony. (*Id.* at PageID #: 1154).

The Court finds Claimant's argument that this case is parallel to *Ensley* unpersuasive. In *Ensley*, the claimant submitted a post-hearing vocational report containing evidence that

contradicted the testimony of the vocational expert at the administrative hearing. *Ensley v. Comm. Of Soc. Sec.*, No. 3:21-CV-00326-SKL, 2022 WL 5287798, *4–5, 9–10 (E.D. Tenn. Aug. 10, 2022). Although the ALJ overruled the claimant's objection, the ALJ did not substantively address the contrary vocational evidence or provide a reviewable explanation for rejecting it. *Id.* at *9–11. The *Ensley* court thus concluded that, although the ALJ had no duty to investigate the vocational expert's testimony, the ALJ was required to do more where the claimant had challenged the vocational expert's testimony and presented contradicting evidence to the ALJ. *Id.* at *10.

Here, Claimant's post-hearing brief did not include a report from another vocational expert or otherwise present comparable vocational evidence contradicting the vocational expert's testimony. (ECF No. 9, PageID #: 361–62). The ALJ in this case also expressly considered Claimant's post-hearing objections and explained that the continued existence and current performance of the challenged occupations were addressed through the vocational expert's hearing testimony and Claimant's cross-examination of the vocational expert. (*Id.* at PageID #: 120–21). Thus, the circumstances that prevented meaningful judicial review in *Ensley* are not present here. *See Ensley*, 2022 WL 5287798, at *10–11.

The record contains the additional vocational evidence required for the Document Preparer occupation. At the time of the ALJ's September 5, 2024 decision, EM-24027 provided that an ALJ cannot rely on certain identified occupations, including Document Preparer, without additional vocational evidence supporting the conclusion that, as currently performed, the occupation's requirements remained consistent with the claimant's RFC and that the occupation continued to exist in significant numbers in the national economy. *Id.*; EM-24027. The ALJ explains in her decision that the "vocational expert explained that while the tools used to perform the document preparer job have changed but the essential tasks have remained similar, as he testified that instead

of using microfiche, document preparers use scanners to prepare documents." (ECF No. 9, PageID #: 120). The ALJ then questioned the vocational expert regarding whether an individual with Claimant's specific functional limitations, such as a person "limited in ability to lifting and carrying 8 lbs at the most," would have the ability to do the jobs that the vocational expert identified. (*Id.* at PageID #: 73). The vocational expert responded that the limited ability would not affect the hypothetical person's ability to do those jobs. (*Id.*).

The ALJ also asked about the ability for workers in these occupations to perform the work while standing or to periodically stand up while working, take a 15-minute break per hour, or miss approximately 4 days of work a month. (*Id.* at PageID #: 73–75). The vocational expert provided responses to each of these hypothetical questions as they relate to the Claimant's RFC. (*Id.*). Claimant's counsel also cross-examined the vocational expert regarding the modern performance of the Document Preparer and Telephone Quotation Clerk occupations and followed up on the ALJ's hypothetical questions. (*Id.* at PageID #: 76–78). Thus, the vocational expert did not merely testify that the Document Preparer occupation continues to exist with some modern changes to how it is performed; the vocational expert addressed whether an individual with Claimant's functional limitations could perform the work. Therefore, the ALJ had the additional vocational evidence as required to support her reliance of the Document Preparer occupation as currently performed.

Claimant's challenge to the Telephone Quotation Clerk occupation is likewise unpersuasive. Unlike Document Preparer, Telephone Quotation Clerk was not included in EM-24027 applicable to the ALJ's decision and is not subject to the additional analysis requirements. Nevertheless, the vocational expert addressed the occupation's current performance at the hearing by describing that "the telephone quotation clerk has changed, as they no longer provide stock

information, the duties of the job remain the same as they provide price quotes." (*Id.* at PageID #: 120). Upon consideration of the vocational expert's testimony, the ALJ overruled Claimant's objections because she found that the jobs were still classified as "SVP 2" simple tasks, which aligned with Claimant's RFC. (*Id.*). Claimant did not provide vocational evidence demonstrating that these occupations were obsolete or materially different. Instead, Claimant opined that the SVP level of the occupations today "exceeds unskilled work per O*NET and the Vocational Handbook." (*Id.*). As the ALJ explained in her decision, the regulations do not "direct an adjudicator to take notice of O*NET, the Vocational Expert Handbook, and other sources by the claimant's representative." (*Id.*)

Accordingly, based on the vocational expert's testimony, which "was based on his experience and research," the ALJ properly relied on the vocational expert's identification of Document Preparer and Telephone Quotation Clerk as jobs that exist in the national economy which Claimant can perform. (*Id.*)

**3. Availability of Significant Numbers of Jobs in the National Economy**

Lastly, Claimant challenges the conclusion that there are significant numbers of the identified jobs existing in the national economy.

The Code of Federal Regulations authorizes the ALJs to use the services of vocational experts when "the issue in determining whether [a claimant] is disabled is whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566(e). And the Sixth Circuit "has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step [five] that the claimant can perform other work." *Wilson v. Comm'r of Soc. Sec.*,

378 F.3d 541, 549 (6th Cir. 2004) (citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 481 (6th Cir. 1988)). *See also Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'").

"There is no 'magic number' that qualifies as 'significant' for purposes of satisfying this prong of the disability inquiry." *Cunningham*, 360 F. App'x at 615 (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Neither Congress nor the Commissioner has defined "significant," rather an ALJ must make this determination on a case-by-case basis. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). "Courts review for substantial evidence the ALJ's significant-number finding by determining whether it 'fits comfortably within what this court and others have deemed "significant."'" *Myers v. Comm'r of Soc. Sec.*, No. 3:24-CV-1390, 2025 WL 251152 (N.D. Ohio Jan. 21, 2025), *report and recommendation adopted*, No. 3:24-CV-1390, 2025 WL 474975 (N.D. Ohio Feb. 12, 2025) (citing *Moats*, 42 F.4th at 563) (quoting *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016)). Vocational expert's testimony is not automatically unreliable because the vocational expert does not produce data supporting the estimates of the number of jobs in the national economy. *Biestek v. Berryhill*, 587 U.S. 97, 107–08 (2019).

There is substantial evidence that 48,000 jobs are enough to be considered a significant number of jobs, as the Sixth Circuit has found far fewer jobs to be significant. *Moats*, 42 F.4th at 563 (finding that 32,000 jobs fits within what the Sixth Circuit and other courts have

found significant); *Taskila,* 819 F.3d at 905 (finding 6,000 jobs to be significant); *Nejat v. Comm'r of Soc. Sec.*, 359 F. Appx 574, 579 (6th Cir. 2009) (finding 2,000 jobs to be significant). Even where an ALJ erroneously relies on some occupations identified by a vocational expert, the error is harmless if the remaining occupation that the claimant can perform exists in significant numbers in the national economy. *See Nejat*, 359 F. App'x at 579 (concluding that, even assuming some of the jobs identified by the ALJ were precluded by the claimant's limitations, the ALJ's identification of 2,000 jobs in a remaining occupation "withstands [the claimant's] challenge"); *Taskila*, 819 F. 3d at 905–06.

Here, the vocational expert indicated that there were approximately 6,000 Telephone Quotation Clerk jobs existing in the national economy, 14,000 Document Preparer jobs, and 2,500 Charge Account Clerk jobs. (ECF No. 9, PageID #: 119). Claimant argues that the ALJ's conclusion that 22,500 occupations in the national economy constitutes "significant numbers" is not supported by substantial evidence. (ECF No. 11, PageID #: 1131). Additionally, Claimant asserts that because Document Preparer and Telephone Quotation Clerk occupations are obsolete, that only leaves 2,500 jobs in the national economy for Charge Account Clerk. (*Id.* at PageID #: 1133). Opposingly, the Commissioner argues that given there is no magic number of national jobs that is sufficient to satisfy step five requirements and that the ALJ based her determination on the vocational expert's testimony and the consistency of the testimony with the information available in the DOT, the ALJ's conclusion is supported by substantial evidence. (*Id.* at PageID #: 1156).

The Court agrees with the Commissioner. Claimant has not sufficiently explained how the ALJ's finding that 22,500 jobs exist in the national economy was unsupported by substantial evidence. Although Claimant relies on *Isaac v. Soc. Sec.*, *Isaac* is distinguishable and is not binding authority for this Court. In *Isaac*, the Eastern District of Michigan concluded that 8,784

national jobs was not considered significant numbers because the claimant had a highly restrictive RFC and the ALJ provided no analysis of the *Hall* factors or other circumstances in which the court could make a meaningful review. *Isaac v. Soc. Sec.*, No. 20-11573, 2021 WL 4167211, *2–3 (E.D. Mich. Sept. 14, 2021). *Isaac* also declined to follow the reasoning of *Taskila* because the court alleged that *Taskila* was based on conflated regional and national job numbers. *Id.* However, *Taskila* remains Sixth Circuit precedent and determined that 6,000 jobs nationally are within the numbers that courts have deemed significant. *Id.* at *3; *Taskila*, 819 F.3d at 905. Additionally, although *Hall* discusses considering multiple factors when determining whether work exists in significant numbers, *Hall* does not establish a numerical threshold for significance. *Hall*, 837 F.2d at 275.

Claimant also relies on several cases that found large numbers of jobs in the national economy insufficient. (ECF No. 11, PageID #: 1132). However, Claimant does not provide those court's reasonings for concluding such numbers were insufficient, which does not explain why the Court should consider those cases when evaluating this case. For example, Claimant cites *Mackins v. Astrue* in which the Sixth Circuit found that 60,000 national jobs were insufficient. (*Id.*) However, the Sixth Circuit explained in *Taskila* that the court ruled that 60,000 national jobs were insufficient in *Mackins* because the court questioned whether the identified occupation was consistent with the claimant's functional limitations and whether given the changes in the economy, the estimated number of jobs actually existed. *Taskila*, 819 F.3d at 906 (discussing *Mackins v. Astrue*, 655 F. Supp. 2d 770, 773, 778 (W.D. Ky. 2009)). Neither *Hall* or *Taskila* require an adjudicator to determine significance by comparing the number of identified jobs to the total size of the national job market. Instead, the inquiry is whether substantial evidence supports the conclusion. *Taskila*, 819 F.3d at 905–06. The Sixth Circuit has not required that all of the *Hall*

factors must be explicitly analyzed in order to determine that jobs exist in significant numbers. *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("*Hall* went on to state that these factors were suggestions only—the ALJ need not explicitly consider each factor.") This determination is ultimately left to the "judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Hall*, 837 F.2d at 275.

Here, the ALJ provided a sufficient explanation for finding the number of jobs in the national economy as significant. The ALJ found that the vocational expert's statement of the number of jobs in the national economy was "an estimate based on reliable information from various sources," including the DOT and census reports. (ECF No. 9, PageID #: 121). Additionally, the ALJ relied on this testimony because it was based on the vocational expert's knowledge of the field of vocational rehabilitation. (*Id.*). The ALJ also noted that the jobs identified by the vocational expert were not isolated occupations existing in only limited numbers in few locations in the nation, which support's the ALJ's ability to rely on the vocational expert's testimony. (*Id.*).

Lastly, the Court rejects the Claimant's contention that Document Preparer and Telephone Quotation Clerk are occupations that are obsolete and thus limits the number of jobs to only 2,500. As discussed above, the Court finds no error in the ALJ's decision regarding the identified occupations that would warrant reversing the administration's non-disability determination. Even assuming, without deciding, that the ALJ erred in relying on those two challenged occupation, any such error would be harmless in this case. Claimant does not challenge the vocational expert's testimony that an individual with Claimant's RFC could perform the Charge Account Clerk occupation, which accounts for approximately 2,500 jobs in the economy. (*Id.*). In *Nejat*, the Sixth Circuit concluded that even if an identified occupation is unavailable to a claimant, 2,000 jobs in

the remaining occupation was sufficient to withstand the claimant's step five challenge. *Nejat*, 359 F. App'x at 579. The ALJ correctly explains that "even if document preparer and telephone quotation clerk were removed from consideration, the number of other jobs cited by the vocational expert would still exceed the well-established threshold of what constitutes a significant number of jobs." (ECF No. 9, PageID #: 120). For the reasons discussed above, none of Claimant's arguments demonstrate that the ALJ's determination on this issue was unsupported by substantial evidence.

Accordingly, the ALJ did not err in her conclusion that the three identified jobs exist in significant numbers in the national economy.

**VI. Conclusion**

Because the ALJ followed proper procedures and her findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Weekley Supplemental Security Income.

**IT IS SO ORDERED.**

Dated: October 14, 2026

*s/Carmen E. Henderson*
Carmen E. Henderson
United States Magistrate Judge